```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
               CIVIL NO. 22-1673(DSD/TNL)
```

PHS West, LLC, and
R on I, LLC,

       Plaintiffs,

v.                                                          **ORDER**

ServerLift Corporation,

       Defendant.


    Justice E. Lindell, Esq. and Greenstein Sellers PLLC, 825 Nicollet Mall, Suite 1648, Minneapolis, MN 55402, counsel for plaintiffs.

    James T. Nikolai, Esq. and DeWitt LLP, 2100 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402, counsel for defendant.


This matter is before the court upon the motion preliminary injunction by defendant ServerLift Corporation. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.


## BACKGROUND

This trademark dispute arises from the use of the words "server" and "lift" or "lifter" in immediate sequence by plaintiffs PHS West, LLC and R on I, Inc. on their websites. ServerLift manufactures and sells "products that transport and position data center equipment" – including computer servers. Zuckerman Decl.

¶ 16. There is no dispute that PHS West and R on I are direct competitors of ServerLift.[1] In addition to selling its products directly, ServerLift also has authorized resellers who sell its products and who are permitted to use ServerLift's marks in doing so. Id. ¶¶ 18, 22.

ServerLift registered the domain name "serverlift.com" in February 2002. Id. ¶¶ 3, 10-12. As of April 14, 2015, ServerLift has owned the trademark SERVERLIFT as it relates to the kinds of data storage lifting equipment at issue here. Szymanski Decl. Ex. 4. In May 2021, ServerLift filed a declaration of use and incontestability with the U.S. Patent and Trademark Office under sections 8 and 15 of the Trademark Act, 15 U.S.C. §§ 1058, 1065. Id. Ex. 5. All parties seem to agree that the mark is incontestable, as ServerLift did not face objections during the required thirty-day opposition period that precedes trademark registration.[2]

There is no dispute that PHS West and R on I are direct competitors of ServerLift. Until recently, however, neither PHS West nor R on I used marks or designations that infringed on

---

[1] PHS West and R on I are sister companies that share some overlap with respect to board and management composition. See Szymanski Decl. Exs. 11, 23-25; Compl. ¶ 8.

[2] ServerLift also owns a stylized mark bearing the name ServerLift. See Szymanski Decl. Exs. 8-10.

ServerLift's mark. PHS West marketed its data center lifters as the "Ergo-Express™ Drive System," "Ergo-Express Lifter," "LIFT-O-Flex Motorized Lifter," "Portable Motorized Lifters," and "Motorized Lifters," and "Data Center Lifters." See id. Exs. 14-18. R on I advertised its products under the following names: "LIFT-O-FLEX Ergonomic Lifters," "LIFT-O-FLEX Lifters," "LIFT-O-FLEX Automated Portable Lifters," "LIFT-O-FLEX portable lifters," "Portable Lifter," "Hybrid Lifter," and "battery powered ergonomic lifters." See id. Exs. 29-33.

Sometime in 2021 or 2022, however, PHS West began prominently using the terms "server lift" and "server lifter" to describe its products. Id. Ex. 19; Budd Decl. Ex. 3. For example, PHS West's website identifies its product Ergo-Express®, but uses the term "Server Lifter" in bolder and larger type, thus highlighting "Server Lifter" over the actual product name. See Szymanski Decl. Ex. 19, at 1. Elsewhere on the website, PHS West refers to its products as "Server Lifters." See id. at 2, 4. R on I followed suit, also using the terms "server lift" and "server lifter" on its website. Id. Exs. 34-36; Lindell Aff. Ex. 6, at 1, Ex. 11, at 3. According to ServerLift, plaintiffs' use of its mark increased traffic to plaintiffs' websites, thus creating confusion in the marketplace and drawing potential clients away from ServerLift. Szymanski Decl. Exs. 20, 35-36; Budd Decl. Exs. 3,

3

5-6.  The upshot seems to be that the plaintiffs' recent use of the words "server" and "lift" or "lifter" in immediate sequence intentionally diverted internet customers away from ServerLifter and directly to plaintiffs.  ServerLift also argues that plaintiffs' use of its mark is likely to cause consumers to believe that they are affiliated in some way.

In May 2022, ServerLift sent plaintiffs a letter accusing them of infringing on the SERVERLIFT mark by using the words "server" and "lift" on their websites with no intervening words or other marks.  Compl. Ex. A.  On June 28, 2022, plaintiffs filed this declaratory judgment action against ServerLift requesting a declaration of noninfringement and seeking cancellation of ServerLift's trademarks.  ServerLift now moves for a preliminary injunction enjoining plaintiffs from using the phrases "server lift," "server lifter," and any phrase including any form of the word "server" followed immediately by and form of the word "lift" in their advertising, labeling, instructions, or packaging.

**DISCUSSION**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety.  <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003).  The court considers four factors in determining whether a preliminary

4

injunction should issue: (1) the likelihood of the movant's ultimate success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is determinative. Id. at 113. Instead, the court considers the particular circumstances of each case, remembering that the primary question is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id.

**I. Likelihood of Success on the Merits**

The court first considers the "most significant" Dataphase factor: the likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). To establish trademark infringement under 15 U.S.C. § 1114 a plaintiff must establish the existence of a valid trademark and likelihood of confusion. Thelen Oil Co. v. Fina Oil & Chem. Co., 962 F.2d 821, 822 (8th Cir. 1992). Here, there is no credible dispute that the ServerLift mark is anything other than presumptively valid. Thus, the court will turn directly to the

5

issue of likelihood of confusion.

The court considers six factors when assessing likelihood of confusion: (1) the strength of the mark; (2) the similarity between the marks at issue; (3) the degree to which the allegedly infringing product competes with the trademark owner's goods; (4) the alleged infringer's intent to confuse the public; (5) the degree of care reasonably expected of potential customers, and (6) evidence of actual confusion. Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005) (citing SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). These factors guide the court's analysis but are not to be rigidly applied. Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1054 (8th Cir. 2005). Instead, "no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." Id. (citing SquirtCo, 628 F.2d at 1091). The court finds that the factors favor a finding of likelihood of confusion at this stage in the litigation.

**A.   Strength of Mark**

According to ServerLift, its marks are strong indicators of source, as they have been used for nearly 20 years as identifiers of its products and, more broadly, its brand in the industry. Zuckerman Decl. ¶¶ 3, 10, 12, 14. ServerLift has received numerous

6

awards for its products and is recognized as a leader in the industry. Id. ¶¶ 15, 16. ServerLift has sold its products to governmental agencies, banks, and fortune 500 companies. Id. ¶¶ 14-15. Plaintiffs do not dispute these facts, but argue that ServerLift's marks are lack strength because they merely describe the products' uses, i.e., they lift data servers. The court is not persuaded by plaintiffs' argument. Although the ServerLift mark does in fact describe the use of its products, the current record establishes that the mark has come to be more than descriptive and instead is a well-recognized brand name and source indicator. See id. Under these circumstances, the court cannot conclude that the mark is weak because it also describes the products' use.

B. **Similarity of Marks**

In assessing the similarity of the marks at issue, the court considers "the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products." Duluth News-Tribune v. Mesabi Pub. Co., 84 F.3d 1093, 1097 (8th Cir. 1996). In doing so, the court assesses the "similarities of sight, sounds, and meaning between the two marks." Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987).

7

Here, there is little doubt about the similarities of the marks. They both use the same exact words in immediate sequence. The only difference is that plaintiffs have placed a space between the words "server" and "lift" or "lifter." They are also meant to convey the same meaning: their products are designed for lifting servers. Further, when spoken, the words are indistinguishable.

Plaintiffs nevertheless deny that they are using the words as a mark because, again, they are simply used to describe their products. The problem from the court's perspective is that the terms are displayed prominently on plaintiffs' websites, more so than the names of the products themselves. The words are used in larger and bolder font and are plainly meant to draw the attention of consumers. As such, it is reasonable to conclude that plaintiffs are using the words as marks. See Woodroast Sys., Inc. v. Rests. Unlimited, Inc., 793 F. Supp. 906, 914 (D. Minn. 1992) (holding that prominence of term in marketing materials is a key factor in determining whether it is being used as a mark).

As a result, the court finds that this factor weighs in favor of ServerLift's position.

C. **Competition Among Parties**

The parties do not dispute that they are in direct competition with one another. This factors thus also weighs in ServerLift's

8

favor.

### D. Intent to Confuse Consumers

ServerLift has sufficiently established plaintiffs' intent to confuse consumers by showing that plaintiffs managed to market and describe their competing products for over a decade without infringing on its mark. Plaintiffs started using the terms "server" and "lift" or "lifter" in immediate succession only recently, and after ServerLift became the industry leader. See Szymanski Decl. ¶¶ 12-17, 25-32; id. Exs. 14-19, 27-34. The reasonable inference is that plaintiffs recently began using ServerLift's mark in order to confuse consumers and draw business away from ServerLift. Indeed, the record supports a finding that plaintiff's shift to use the terms "server" and "lift" or "lifter" without intervening words has effectively redirected internet searches for ServerLift to plaintiffs' websites, thus perhaps causing confusion. See Budd Decl.; Szymanski Decl. Ex. 20. Discovery may yield other explanations for plaintiffs' recent marketing decisions, but for the time being, this factor favors ServerLift.

### E. Degree of Care Used by Consumers

The court also considers the care consumers use when choosing among the competing products at issue. "Confusion is more likely

9

to occur in situations where the services or goods are relatively inexpensive because consumers typically exercise less care when making such choices than when choosing more expensive goods or services." Woodroast Sys., Inc., 793 F. Supp. at 915.

Here, both parties provide evidence suggesting that consumers purchasing their products are relatively sophisticated given the expense of the products and their use in businesses rather than homes.  This fact weighs against a finding of confusion but not enough to counterbalance the factors discussed above.  This is particularly true given that ServerLift has authorized resellers who use its marks.  Even sophisticated consumers searching for such authorized resellers may be confused and thus perhaps likely to believe that plaintiffs are authorized resellers of ServerLift, rather than its competitors.

      **F.  Evidence of Actual Confusion**

At this early stage in the case, ServerLift has not presented evidence of actual confusion.  Although proof of actual confusion is "positive proof of likelihood of confusion[,]" "it is not necessary to a finding of trademark infringement." SquirtCo, 628 F.2d at 1091.  As a result, this factor does not undermine a finding in ServerLift's favor.

10

**II.  Fair Use Doctrine**

Plaintiffs argue that even if ServerLift has established a likelihood of confusion, the fair use doctrine applies.  Under the fair use doctrine, plaintiffs have the burden of establishing the following three elements: (1) "use of the registered 'term or device' is 'otherwise than as a trade or service mark;'" (2) "the term or device is 'descriptive of' [plaintiffs'] goods;" and (3) plaintiffs are using the term "fairly and in good faith only to describe to users those goods and services."  Rainforest Cafe, Inc. v. Amazon, Inc., 86 F. Supp. 2d 886, 906 (D. Minn. 1999) (internal citations omitted).  Plaintiffs cannot meet their burden at this time.  As already discussed, they appear to be using the terms "server" and "lift" or "lifter" in immediate succession as marks.  In addition, there is an open question as to whether they are using the marks in good faith given the recency of the changes to their websites to include the marks.  This aspect of the case requires further probing through discovery and thus does not serve as a basis for defeating ServerLift's motion.

**III. Irreparable Harm**

The court now turns to the remainder of the Dataphase factors.  To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and

11

present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "A mere possibility of irreparable harm is not enough" to issue an injunction. Superior Edge, Inc. v. Monsanto Co., 964 F. Supp. 2d 1017, 1046 (D. Minn. 2013). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

"A plaintiff seeking an[]... injunction [under the Lanham Act] shall be entitled to a rebuttable presumption of irreparable harm ... upon a finding of likelihood of success on the merits for a violation [of the Act] in the case of a motion for a preliminary injunction[.]" 15 U.S.C. § 1116(a). Plaintiffs have not offered argument or evidence to rebut the presumption of irreparable harm and instead contend that this factor has not been met because ServerLift cannot succeed on the merits. As set forth above, the court disagrees. And given the absence of any evidence to rebut the applicable presumption, the court must conclude that ServerLift faces irreparable harm if the preliminary injunction is denied.

## IV.    Balance of Harms

Under this factor, "a court should flexibly weigh the case's particular circumstances to determine whether ... justice requires the court to intervene...." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citation and internal quotation marks omitted).  The question is whether the harm to ServerLift in the absence of a preliminary injunction outweighs the potential harm that granting a preliminary injunction may cause to plaintiffs.  Dataphase, 640 F.2d at 114.  The essential inquiry in weighing the equities is whether the balance tips decidedly toward the movant.  Gen. Mills, 824 F.2d at 624.

Here, ServerLift stands more likely to be harmed should the injunction be denied, than are plaintiffs if it is granted. ServerLift faces additional confusion in the marketplace that could cause its market share and good will to erode unfairly if the injunction is denied.  On the other hand, if granted, plaintiffs must simply edit its materials so that they no longer use the terms "server" and "lift" or "lifter" in immediate succession.  Such changes, although certainly inconvenient, are possible and not unduly burdensome given plaintiffs' previously non-infringing materials.

**V.   Public Interest**

The public interest favors protecting trademarks and preventing misrepresentations to consumers. There also is a public interest in unrestrained competition. Here, however, it appears that plaintiffs may be engaged in unfair competition. Therefore, the public interest factor is neutral or favors ServerLift.

As a result, based on a balancing of the four Dataphase factors, the court determines that a preliminary injunction is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion for preliminary injection [ECF No. 19] is granted;

2.   PHS West, LLC and R on I, LLC, including their officers, directors, members, shareholders, agents, and employees - and persons acting in concert and participation with them - are enjoined from using ServerLift's trademark in their advertising, labeling, instructions, and packaging, including the phrases SERVER LIFT, SERVER LIFTER and any other phrase including any form of the word SERVER followed immediately by any form of the word

LIFT; and

    3. ServerLift is not required to post a bond to secure injunctive relief.

**LET JUDGMENT BE ENTERED ACCORDNGLY.**

Dated: February 27, 2023

                                                  s/David S. Doty
                                                 David S. Doty, Judge
                                                 United States District Court